ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ROSS WEINGARTEN (NYBN 5236401)
Assistant United States Attorney

> 450 Golden Gate Avenue, Box 36055
> San Francisco, California 94102-3495
> Telephone: (415) 436-7200
> FAX: (415) 436-7234
> Ross.weingarten@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 21-00416 JD |
| Plaintiff, | |
| v. | **UNITED STATES' BRIEF ON RELEVANT SENTENCING GUIDELINES CALCULATION** |
| CELIN DAVID DOBLADO-CANACA, | Sentencing Date:  June 5, 2023 |
| Defendant. | Sentencing Time: 10:30 a.m. |

## I.    INTRODUCTION

On May 8, 2023, the parties in the above-captioned case appeared for sentencing following the defendant's guilty plea to one count of distribution of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  As the Court knows, the government alleges that on May 18, 2020, the defendant sold $60 of fentanyl to an individual, M.I.G., who provided those drugs to his friends in San Bruno.  One of the victims died; the other one overdosed but survived.  At the May 8 hearing, rather than sentence the defendant, the Court requested that the parties file briefs explaining their positions on the applicable Guidelines range in this case.  Specifically, the Court asked the parties to address the application of U.S.S.G. § 2D1.1(a)(2) in this case, which results in a base offense level of 38 and applies if the

**US SENTENCING MEMORANDUM**                    1

defendant is convicted under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) "and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." *See* U.S.S.G. § 2D1.1(a)(2). In the PSR, Probation found that §2D1.1(a)(2) does apply, *see* Dkt. No. 31, and the government and defendant both agreed in their sentencing memos (even if both parties argued for significant downward variances from the resulting Guidelines calculation).

The government now believes, because the defendant pled open as opposed to pursuant to a plea agreement with stipulated facts about the death, that the appropriate Guidelines range in this case should be determined by the amount of drugs sold by the defendant. The amount in question is very small, less than four grams of fentanyl, and so the base offense level is 12 pursuant to U.S.S.G. § 2D1.1(c)(14). After removing two points for acceptance of guilt, the defendant's total offense level is 10. As he is in Criminal History Category III, the applicable Guidelines range is 10-16 months. As the Court knows, the Court may depart upwards in this case pursuant to U.S.S.G. § 5K2.1, which states that "If death resulted, the court may increase the sentence above the authorized guideline range." The government also notes that it reserves the right, in future overdose cases with plea agreement admissions regarding the resulting death, to argue that USSG § 2D1.1(a)(2) applies and that the base offense level should be 38, rather than based on the attributable drug weight.

## II.    Relevant Procedural History

The defendant was charged by Information on October 28, 2021 with one count of distribution of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Dkt. No. 1. On July 11, 2022, defendant pleaded guilty pursuant to a plea agreement under Rule 11(c)(1)(C). Dkt. No. 15. In that plea agreement, and during the plea colloquy held in open court and under oath, defendant admitted that the drugs he sold were the cause of Victim 1's death. However, the Court rejected that plea agreement prior to sentencing. The defendant again plead guilty on April 4, 2023, this time without a plea agreement. Dkt. No. 29. In his Application for Permission to Enter a Plea of Guilty, the defendant admits only to distributing fentanyl on May 18, 2023; he does not admit to causing Victim 1's death.

In the PSR, Probation found that the Base Offense Level was 38 pursuant to U.S.S.G. § 2D1.1(a)(2). Dkt. No. 31, PSR ¶ 20. The government in its sentencing memo agreed, citing *United States v. Deeks*, 303 Fed.Appx. 507 (9th Cir. 2008) as authority for the proposition that the higher base

offense level applies even if the defendant did not plead guilty to the crime of distribution resulting in death.  Dkt. No. 33.  The defendant in his sentencing memo adopted the Guidelines calculation in the PSR.  Dkt. No. 32.  Accordingly, all parties agreed that the Base Offense Level was 38 at the hearing on May 8, 2023.  If true, the defendant's Total Offense Level would be 35, and because Probation calculates he is a CHC III, the applicable Guidelines range would be 210-262 months.  The Court asked for briefing from the parties on whether 2D1.1(a)(2) applies in this case because the defendant did not plead guilty to distributing drugs resulting in death or great bodily injury, and there is no operative plea agreement in which the defendant admits to causing the death of Victim 1.

### III.    DISCUSSION

As the Court well knows, the base offense level in a drug case normally is determined by the aggregate weight of the drugs attributable to the defendant.  U.S.S.G. § 2D1.1 applic. notes 5, 7.  Here, since the crime involved a less than gram of fentanyl (highlighting just how potent and deadly the drug is), the base offense level would be 12.  *Id.* § 2D1.1(c)(14) (less than four grams of fentanyl).

However, the Guidelines also provide specific base offense levels where the drug distribution resulted in death or serious bodily injury.  *Id*. §§ 2D1.1(a)(1)-(4).  Section 2D1.1(a)(2) provides for a base offense level 38 where the defendant is convicted under 21 U.S.C. § 841(b)(1)(C), and where "the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance."  Probation concludes that § 2D1.1(a)(2) applies in this case.  *See* PSR ¶ 20.  Though defendant was convicted under 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(C), appellate court decisions interpreting Guidelines § 2D1.1(a)(2) have left open the question whether that offense level it applies in cases like this, where the specific charge the defendant admits does not allege a death resulting from distribution.

The question is whether the "the offense of conviction" here establishes that death resulted from the use of the fentanyl distributed by the defendant.  Section 2D1.1 does not define that phrase.  Section 1B1.1 indicates that "offense" and "offense of conviction" have different meanings, and that the phrase "offense of conviction" has a narrower meaning.  U.S.S.G. § 1B1.1 n. 1(H) ("'Offense' means the offense of conviction and all relevant conduct under § 1B1.3 . . ."); *United States v. Lawler*, 818 F.3d 281, 284 (7th Cir. 2016) (where as "'offense of conviction' does not include 'relevant conduct'" and

"'offense of conviction' is narrower than 'offense'").  And § 1B1.2(a) appears to indicate that the phrase "offense of conviction" is limited to the offense charged in the indictment or information.  *Id.* ("Determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted).").  However, § 1B1.2(a) also contemplates that a defendant might stipulate in a plea agreement to a more serious offense than the "offense of conviction," and it instructs that the more serious offense provision applies in that case.  *Id.* ("However, in the case of a plea agreement (written or made orally on the record) containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two applicable to the stipulated offense.").  Application note 1 clarifies that in this circumstance, the plea agreement must contain the parties' explicit agreement that such a stipulation is a stipulation for this purpose.

In other words, the Guidelines appear to contemplate that § 2D1.1(a)(2) might apply in two scenarios, either (1) where the charge the defendant admits alleges a death resulting from the distribution, or (2) where the defendant admits in a plea agreement that his act of distribution resulted in a death, even if the charge itself does not contain that allegation.

Undersigned counsel is aware of only one Ninth Circuit that touches directly on this issue.  In an unpublished decision, the Ninth Circuit appears to have endorsed the application of § 2D1.1(a)(2) where the charging document did not allege a death but the government proved it (by an unknown standard). *See United States v. Deeks*, 303 Fed.Appx. 507, 509-10 (9th Cir. 2008).  In *Deeks*, the Ninth Circuit held:

> Finally, the district court properly applied Sentencing Guideline § 2D1.1(a)(2),
> which requires a base offense level of 38 if the defendant is convicted of
> importation of a controlled substance and "the offense of conviction establishes that
> death or serious bodily injury resulted from use of the substance." The Guideline
> applies if the government proved that the controlled substance Deeks imported into
> the United States was used by Danelle Garza and caused her death; the government
> is not required to prove foreseeability. *See United States v. Houston,* 406 F.3d 1121,
> 1122–24 (9th Cir.2005) (interpreting 21 U.S.C. § 841(b)(1)(C) which contains
> language nearly identical to U.S.S.G. § 2D1.1(a)(2)). The district court's finding
> that the cocaine imported by Deeks caused Garza's death was not clearly erroneous.

1    *Id.* at 509-10.  In other words, the Ninth Circuit appears to have endorsed the application of

2    § 2D1.1(a)(2) where the charged offense did not allege a death but the government proved it by an

3    unidentified standard.  And the District of Columbia Circuit affirmed application of § 2D1.1(a)(2) where

4    the charging document does not appear to have alleged the death, but the defendant admitted in a plea

5    agreement that his distribution resulted in death.  *United States v. Shah*, 453 F.3d 520, 524-25 (D.C. Cir.

6    2006); *United States v. Shah*, Brief of Appellant in No. 03-3070, 2006 WL 351184, at *1 (D.C. Cir.,

7    Feb. 8, 2006).

8         There appears to be a circuit split, however, and more recent appellate court decisions have taken

9    a more restrictive approach, however.  In *Lawler*, the Seventh Circuit held that § 2D1.1(a)(2) did not

10   apply where the charging document did not specifically allege that the defendant's distribution resulted

11   in death.  818 F.3d at 283 ("We join the Third, Fifth, and Sixth Circuits in holding that § 2D1.1(a)(2)

12   applies only when a resulting death (or serious bodily injury) was an element of the crime of conviction,

13   proven beyond a reasonable doubt or admitted by the defendant.").  In *Lawler*, the defendant was one of

14   30 defendants charged in a massive drug conspiracy that led to five deaths.  *Id*. at 282.  The Court found

15   that 2D1.1(a)(2) did not apply to the defendant, a low-level dealer, who pleaded guilty to conspiracy to

16   traffic drugs but not to causing anyone's death.  *Id*. at 284.  The Fifth Circuit, similarly, held that

17   § 2D1.1(a)(2) applies "only when the second prong of the statute, i.e. that death or serious bodily injury

18   results, is also part of the crime of conviction," but found that it was not plain error to apply that section

19   where the evidence linked the defendant's distribution to a death and the defendant did not object at

20   sentencing to the application of § 2D1.1(a)(2).  *See United States v. Greenough*, 669 F.3d 567, 573-74

21   (5th Cir. 2012).  And the Third and Sixth Circuits, similarly, have held that § 2D1.1(a)(2) cannot (or

22   should not) be applied on a preponderance of the evidence finding.  *See United States v. Rebmann*, 321

23   F.3d 540, 544 (6th Cir. 2003); *United States v. Pressler*, 256 F.3d 144, 157 n.7 (3rd Cir. 2001).

24        The Fifth, Sixth and Seventh Circuits' decisions involved cases where the charge to which the

25   defendants pleaded did not include proof of the death as an element of the charge, nor did the defendant

26   admit causing the death in a plea agreement.  In *Lawler*, the defendant did not admit in her plea

27   agreement that her distribution of heroin resulted in a death – to the contrary, she "reserved her right to

28   contest those issues" at sentencing, and the government conceded it had not proven the link to the death

beyond a reasonable doubt.  818 F.3d at 282.  Similar to this case, in *Greenough*, the defendant pleaded guilty without a plea agreement and did not admit that her distribution resulted in death.  669 F.3d at 570.  And in <u>*Rebmann*</u>, the defendant pleaded guilty to distribution but did not admit the death and the government did not prove the death beyond a reasonable doubt.  321 F.3d at 541.  *But see Pressler*, 256 F.3d at 148 (stating, in *dicta*, that § 2D1.1(a)(2) should not apply where the defendant did not admit or concede that his heroin caused an overdose, even though the court found that the government had proven the connection beyond a reasonable doubt).

Here, the defendant admitted in a prior plea agreement that the fentanyl he distributed caused the victim's death.  Dkt. No. 15.  The defendant, under oath, admitted to the Court at the change of plea hearing that the facts set forth in the plea agreement, including the causal link between the drugs sold and Victim 1's death, were true.  If that plea agreement were still operative, the defendant's stipulation would establish the connection to the death sufficient to find that § 2D1.1(a)(2) applies.  However, the Court rejected that plea agreement, and the defendant then pleaded guilty with no agreement. Accordingly, based on the unique procedural posture of this case and the fact that there is no operative plea agreement, the government believes that § 2D1.1(a)(2) should not apply.  Instead, the Court should use the amount of fentanyl sold (less than four grams) to determine the applicable Guidelines range.  As noted above, United States reserves the right, in future overdose cases with plea agreement admissions to the resulting death, to argue that USSG § 2D1.1(a)(2) applies and that the base offense level should be 38, rather than based on the attributable drug weight.

Finally, as the Court pointed out at the May 8 hearing, the Court can depart upward based on at least two Guidelines provisions.  First, under U.S.S.G. § 5K2.1, the court "may increase the sentence above the authorized guideline range" if death resulted."  The Guidelines counsel that while "Loss of life does not automatically suggest a sentence at or near the statutory maximum," the sentencing judge must consider matters such as the defendant's state of mind, the degree of planning or preparation, the dangerousness of the conduct, the extent to which death or serious injury was intended or knowingly risked, and other factors.  *Id*.  The second provision is U.S.S.G. § 5K2.21.  Under that section, the court "may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in

1  the case as part of a plea agreement or for any other reason; and (2) that did not enter into the

2  determination of the applicable guideline range." U.S.S.G. § 5K2.21.

3       Both sections apply here. Under 5K2.1, death resulted from the defendant's drug dealing.

4  However, the Guidelines section requires the Court to consider numerous factors about the nature of the

5  offense, including the defendant's intent and the degree of planning or preparation. As the government

6  noted in its prior sentencing memo, the defendant was a street-level drug dealer who sold a small

7  amount of drugs that ultimately killed Victim 1. There is no evidence that on the day of the fateful sale,

8  the defendant knew he was selling fentanyl or intended to harm anyone (there is evidence, however, that

9  two days later at the controlled buy with an undercover agent, the defendant knew that what he was

10  selling was fentanyl). Indeed, the customer M.I.G. believed he was selling cocaine. For these reasons

11  and others having to do with the defendant's characteristics, the government has recommended a 72

12  month sentence, rather than more time in custody. But there is no doubt that §5K2.1 allows the Court to

13  sentence the defendant to a sentence higher than the Guidelines range. So too does §5K2.21, as the

14  distribution of drugs resulting in the death of Victim 1 and the near death of Victim 2 is conduct

15  underlying a potential charge that was not pursued in this case and, if the Court finds that the base

16  offense level is based on the weight of the fentanyl, that conduct would not enter into the determination

17  of the applicable guideline range. Accordingly, the Court is well within its rights to depart upwards

18  from the range and sentence the defendant to any sentence the Court deems fair based on the totality of

19  the conduct and all § 3553(a) factors.

20  **IV.**  **CONCLUSION**

21       For the foregoing reasons, the government believes that the Total Offense Level in this case

22  should be 10, the applicable Guidelines range is 10-16 months, but that the Court can sentence the

23  defendant to any sentence it feels is reasonable based on the totality of the conduct and the §3553(a)

24  factors. The government maintains its recommendation that, in this tragic case, a sentence of 72 months

25  //

26  //

27  //

28  //

**US SENTENCING MEMORANDUM**      7

would satisfy the goals of sentencing.

DATED: May 22, 2023                                         Respectfully submitted,

                                                           ISMAIL J. RAMSEY
                                                           United States Attorney

                                                            _/s/ Ross Weingarten_____
                                                           ROSS WEINGARTEN
                                                           Assistant United States Attorney